[Crim. No. 14091. In Bank. Apr. 30, 1970.]

In re RICKY H., a Minor, on Habeas Corpus.

**COUNSEL**

Stephen Manley and Brian Paddock for Petitioner.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Edward A. Hinz, Jr., Deputy Attorneys General, for Respondent.

**OPINION**

**BURKE, J.**—Petitioner is a 17-year-old juvenile committed to the custody of the California Youth Authority and presently detained at the O. H. Close School for Boys, having participated in a burglary.[1] Prior to and during the proceedings in juvenile court which led to his commitment, petitioner was correctly advised that he had the right to be represented by counsel at all stages of the proceedings, and that if he could not afford to retain his own counsel, or if his parents failed to provide counsel for him, the court would appoint counsel to represent him.[2] However, petitioner was also advised that since his father was employed, the county would be entitled to reimbursement from him for the cost of appointed counsel.[3]

[1] See Welfare and Institutions Code sections 602, 725, and 731.

[2] See Welfare and Institutions Code sections 625, 627.5, 634 and 700. Section 700 in pertinent part provides: "In any case in which the minor is alleged to be a person described in Section 601 [habitual truant, etc.] or 602 [commission of crime], he shall be represented by counsel and the court shall appoint counsel to represent the minor if the minor or his parent or guardian desires counsel but is unable to afford and cannot for that reason employ counsel, unless there is an intelligent waiver of the right of counsel by the minor. If the parent or guardian does not furnish counsel and the court determines that such parent or guardian has the ability to pay, the court shall appoint counsel at the expense of the parent or guardian."

[3] Welfare and Institutions Code section 903.1 provides: "The father, mother, spouse, or other person liable for the support of a minor person, . . . shall be liable for the cost to the county of legal services rendered to the minor by the public defender pursuant to the order of the juvenile court, or for the cost to the county for legal services rendered to the minor by private attorney appointed pursuant to the order of the juvenile court. The liability of such persons (in this article called relatives) and estates shall be a joint and several liability."

Section 903.1 contemplates that reimbursement will be sought only from parents or

Petitioner, whose father was already indebted to the county for the cost of petitioner's prior detentions,[4] elected to waive his right to appointed counsel rather than cause his father to incur additional obligations to the county.[5] Consequently, at the hearing on the petition to declare petitioner a ward of the court, petitioner formally waived counsel, admitted the truth of the petition's allegations, and was thereupon committed to the custody of the Youth Authority in accordance with the recommendations of the probation department.

Petitioner now challenges the validity of section 903.1 of the Welfare and Institutions Code, which makes parents and other responsible relatives liable to the county for the cost of legal services rendered to the minor in juvenile court proceedings. We have concluded that section 903.1 must be upheld as reasonably necessary and proper to carry out the goals which underlie the juvenile court program. However, we have also concluded that petitioner should not have been permitted to waive counsel to avoid the operation of section 903.1, as a purported waiver made by a minor under such circumstances is neither voluntary nor intelligent, and is therefore ineffective.

 Petitioner first contends that section 903.1 unreasonably and arbitrarily discriminates against the parents of indigent juveniles, thereby denying petitioner and his parents equal protection of the laws. (U.S.

---

other relatives having the ability to pay for counsel. (See § 700, *supra*, fn 2.) Thus, section 907 authorizes an investigation to determine whether the minor's relatives are financially able to pay the charges provided for in section 903.1 et al., and section 905 authorizes the county to reduce or cancel these charges upon proof that the minor's relatives are unable to pay them.

In the instant case, petitioner was allegedly told that the public defender would charge $35 to represent him. Petitioner was also advised of a "possibility" that the court might appoint private counsel at no cost to himself or his parents. Although petitioner failed to request the court to appoint private counsel at no charge, his neglect was excusable, since the applicable statutory provisions and especially section 903.1, expressly require reimbursement of counsel fees charged by both the public defender and private counsel.

[4]Section 903 of the Welfare and Institutions Code imposes liability upon the minor's parents and other responsible relatives for the cost of care and support of the minor while he is confined in any county institution pursuant to order of the juvenile court.

[5]The People dispute petitioner's assertion that he waived counsel solely to avoid increasing his father's obligation to the county. However, the People conceded that petitioner did inform a juvenile probation officer, prior to the hearing, that he would waive counsel if his father had to reimburse the county for the cost thereof. Therefore, we accept petitioner's allegations as true. Moreover, as pointed out in *In re Allen*, 71 Cal.2d 388, 390-391 [78 Cal.Rptr. 207, 455 P.2d 143], the fact that other persons might be unnecessarily deterred from the free exercise of the right to counsel justifies examination of the question, even though the record fails to establish conclusively an actual deterrent effect in the instant case.

Const., 14th Amend., § 1; Cal. Const., art. I, §§ 11, 21.) Petitioner relies on *Department of Mental Hygiene* v. *Hawley,* 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], and *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720], remanded 380 U.S. 194 [13 L.Ed.2d 753, 85 S.Ct. 871], subsequent opinion 62 Cal.2d 586 [43 Cal. Rptr. 329, 400 P.2d 321], which invalidated certain "responsible relatives" legislation on similar grounds.

■ In considering petitioner's challenge we must keep in mind that section 903.1 was enacted subsequent to our decisions in *Hawley* and *Kirchner.* Consequently, "Such deliberate acts of the Legislature come before us clothed with a presumption of constitutionaltiy. ■ 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakeably appears. [Citations].' " (*In re Dennis M.,* 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; see *Whittaker* v. *Superior Court,* 68 Cal.2d 357, 367-368 [66 Cal.Rptr. 710, 438 P.2d 358]; *County of Alameda* v. *Espinoza,* 243 Cal.App.2d 534, 540 [52 Cal.Rptr. 480].)

This court invalidated the legislation involved in the *Hawley* and *Kirchner* cases primarily because of our conviction that the state, rather than any arbitrarily selected group of private citizens, should bear the cost of such state functions as supporting persons committed to state institutions for the benefit and protection of the general public. As stated in *Kirchner,* "Whether the commitment is incidental to an alleged violation of a penal statute, as in *Hawley,* or is essentially a civil commitment as in the instant case, the purposes of confinement and treatment or care in either case encompass the protection of society from the confined person, and his own protection and possible reclamation as a productive member of the body politic. Hence the cost of maintaining the state institution, including provision of adequtae care for its inmates, cannot be *arbitrarily* charged to one class in the society; such assessment violates the equal protection clause." (Italics added; 60 Cal.2d at p. 720.)

■ In the instant case, the statutory provisions entitling an indigent juvenile to be represented by appointed counsel in juvenile court proceedings were enacted for the protection and preservation of the minor's constitutional rights (see *In re Gault,* 387 U.S. 1, 34-42 [18 L.Ed.2d 527, 550-554, 87 S.Ct. 1428]), rather than for the protection of society generally. ■ As stated in *In re Dennis M., supra,* 70 Cal.2d 444, 456, "[I]n adult criminal prosecutions . . . a major goal is corrective confinement of the defendant for the protection of society. But even after *Gault,* as we have seen, juvenile proceedings retain a *sui generis* character: al-

though certain basic rules of due process must be observed, the proceedings are nevertheless conducted for the protection and benefit of the youth in question." Thus, the rationale of *Hawley* and *Kirchner,* prohibiting the state from recouping the cost of social welfare programs from private sources, is less compelling when applied to section 903.1. (See *County of Alameda* v. *Espinoza, supra,* 243 Cal.App.2d 534, 544-546; *County of Alameda* v. *Kaiser,* 238 Cal.App.2d 815, 818 [48 Cal.Rptr. 343].)

Moreover, *Hawley* involved the liability of a father for the care of his insane adult son, who had been charged with the murder of his mother, and *Kirchner* involved the liability of a daughter for the care of her mentally ill mother. Neither case concerned the discharge of common law support obligations, since "At common law there was no liability on a child to support parents, or on parents to support an adult child. [Citations.]" (*Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716, 718, fn. 4.)

■ The instant case, on the other hand, presents questions regarding the extent of the parents' obligation to support their minor children, an obligation which did exist at common law. (See Civ. Code, §§ 196, 206, 207, 246, 248; 37 Cal.Jur.2d, Parent and Child, § 19, p. 165; 39 Am. Jur., Parent and Child, § 35, pp. 630-631.)

Several recent cases have distinguished *Hawley* and *Kirchner* on the ground that those cases did not involve common law support obligations. (*In re Shaieb,* 250 Cal.App.2d 553, 557-558 [58 Cal.Rptr. 631] [parent-minor child]; *Department of Mental Hygiene* v. *Kolts,* 247 Cal.App.2d 154, 157, 163 [55 Cal.Rptr. 437] [husband-wife]; *Dept. of Mental Hygiene* v. *O'Connor,* 246 Cal.App.2d 24, 27-29 [54 Cal.Rptr.432] [husband-wife]; *County of Alameda* v. *Espinoza, supra,* 243 Cal.App.2d 534, 541-544 [parent-minor child]; *In re Dudley,* 239 Cal.App.2d 401, 408-409 [48 Cal.Rptr. 790] [parent-minor child]; *County of Alameda* v. *Kaiser, supra,* 238 Cal.App.2d 815, 818 [parent-minor child].) The *Espinoza* and *Shaieb* cases, *supra,* upheld the validity of section 903 of the Welfare and Institutions Code, which obligates the parents, spouse, or other person liable for the minor's support, to reimburse the county for the cost of supporting the minor in county facilities pursuant to juvenile court law.

Therefore, if the expenses incurred in procuring counsel to represent the minor in juvenile court proceedings are properly chargeable to the parents as an element of their preexisting support obligation, the reasoning of the foregoing cases should apply, and section 903.1 should be upheld.

Speaking generally of the necessity of representation in criminal proceedings, the United States Supreme Court has stated that "lawyers in criminal courts are necessities, not luxuries." (*Gideon* v. *Wainwight,* 372 U.S. 335,

344 [9 L.Ed.2d 799, 805, 83 S.Ct. 792, 93 A.L.R.2d 733].) The court made the same observation in the context of juvenile proceedings which could involve a loss of liberty: "The child 'requires the guiding hand of counsel at every step in the proceedings against him.'" (*In re Gault, supra,* 387 U.S. 1, 36 [18 L.Ed.2d 527, 551].) Consequently, it would be anomalous to suggest that the parental support obligation extends to furnishing food, clothing, shelter and medical care,[6] but not legal assistance essential to protect and preserve the minor's constitutional rights.

There exists substantial authority holding that counsel fees incurred on behalf of a minor child are in the nature of "necessaries" for which the parents are liable. (*Price* v. *Perkins,* 242 Md. 501 [219 A.2d 557]; *Schwartz* v. *Jacob* (Tex. Civ.App.) 394 S.W.2d 15, 21; *Matthews* v. *Matthews,* 30 Misc.2d 681 [222 N.Y.S.2d 31], affd. 14 N.Y.2d 778 [250 N.Y.S.2d 810, 199 N.E.2d 843]; *Griston* v. *Stousland,* 186 Misc. 201 [60 N.Y.S.2d 118, 119] [fees for defending child in criminal action]; 67 C.J.S., Parent and Child, § 16, subd. (4), p. 703; see Annot. 13 A.L.R.3d 1251, 1256, §§ 3, 4, subd. [b]; *Leonard* v. *Alexander,* 50 Cal.App.2d 385, 389 [122 P.2d 984]; *Stone* v. *Conkle,* 31 Cal.App.2d 348, 351 [88 P.2d 197].)

Moreover, a parent's support obligation does not end with furnishing mere necessaries, for the minor is entitled to be maintained in a style and condition consonant with his parent's financial ability and position in society. (*Chapin* v. *Superior Court,* 239 Cal.App.2d 851, 856 [49 Cal.Rptr. 199]; *Caldwell* v. *Caldwell,* 204 Cal.App.2d 819, 821 [22 Cal.Rptr. 854].)

The foregoing authorities are especially persuasive as applied to the instant case wherein, in the words of petitioner's counsel, "the minor has been previously incarcerated and the threat of long-term detention is present." We conclude that section 903.1 is merely declarative of the parents' preexisting obligation to provide reasonable and necessary support to their minor children, and to reimburse third persons providing that support upon the parents' failure to do so. (See Civ. Code, §§ 207, 248.) Consequently, the imposition of liability for counsel fees under section 903.1 cannot be characterized as arbitrary or a denial of equal protection of the laws.

Petitioner points out that presently there exist no statutory provisions imposing upon indigent adults, or their parents, any obligation to reimburse the county for the cost of appointed counsel in criminal proceedings. However, the fact that the Legislature has not acted in other areas is not necessarily dispositive, for "The Legislature is not bound, in order

---

[6]See 37 Cal. Jur. 2d, Parent and Child, section 24, at pages 171-172, and cases cited.

to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson,* 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481]; accord *First Unitarian Church* v. *County of Los Angeles,* 48 Cal.2d 419, 433 [311 P.2d 508].) The Legislature could well have determined that legislation requiring reimbursement of costs in juvenile court proceedings had a greater priority or urgency than comparable legislation in other areas, or that the likelihood of ultimately obtaining reimbursement from indigent adults was too minimal to justify the cost of administering such legislation.

■ Although statutes which affect a particular class must be based upon rational distinctions or classifications (*Rinaldi* v. *Yeager,* 384 U.S. 305, 308-309 [16 L.Ed.2d 577, 579-580, 86 S.Ct. 1497]), there is no constitutional requirement of uniform treatment (*Bilyeu* v. *State Emp. Retirement System,* 58 Cal.2d 618, 623 [24 Cal.Rptr. 562, 375 P.2d 442]). Class legislation is not arbitrary if it is based upon some difference or distinction having a substantial relation to the purpose of the statute. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 288 [32 Cal.Rptr. 830, 384 P.2d 158].) ■ This court must presume that section 903.1 is based upon a valid classification. (*Bilyeu* v. *State Emp. Retirement System, supra; Whittaker* v. *Superior Court, supra,* 68 Cal.2d 357, 367-368.)

■ Moreover, it is apparent that the reimbursement provision is reasonably necessary to accomplish valid legislative purposes. First, reimbursement obviously assists the various counties in meeting the increasing cost of providing appointed counsel for indigent juveniles. (See, e.g., Washington, "S.F. Juvenile Justice in a Bad Fund Squeeze," San Francisco Chronicle, January 19, 1970, p. 5, cols. 6-8.) To invalidate the reimbursement provision could endanger the entire juvenile court program.

Secondly, section 903.1 helps promote the substantive aims underlying that program by encouraging parents and children alike to avoid further acts of delinquency. As stated in *County of Alameda* v. *Espinoza, supra,* 243 Cal.App.2d 534, 547, which upheld Welfare and Institutions Code section 903, requiring parents and other responsible relatives to reimburse the county for the cost of supporting juveniles committed to county facilities, "It is not facetious to state that making a parent aware of his obligation to support his child commensurate with his ability may affect his desire to make a change in conditions which will enable the child to accomplish a better adjustment under the parental roof." The court noted that the alternative of relieving the parent of all responsibility is hardly conducive

of future parental cooperation in any corrective program with which it is expected that the parents will assist.

 Thus, we conclude that there is no merit to petitioner's contention that section 903.1 unreasonably or arbitrarily denies him or his parents equal protection of the laws.

 Petitioner also contends that section 903.1 impermissibly restrains or "chills" the free exercise of the constitutional right to counsel. Of course, petitioner does not contend that the reimbursement condition itself constitutes a denial of that right. Just as a nonindigent adult has no constitutional right to appointed counsel in a criminal case (see *Gideon* v. *Wainwright, supra,* 372 U.S. 335, 344 [9 L.Ed.2d 799, 805]; *Williams* v. *Superior Court,* 226 Cal.App.2d 666, 672 [38 Cal.Rptr. 291]; *People* v. *Ferry,* 237 Cal.App.2d 880, 886 [47 Cal.Rptr. 324]), neither does a minor have a constitutional right to appointed counsel without reference to the financial status of his parents. As stated in *In re Gault, supra,* 387 U.S. 1, 41 [18 L.Ed.2d 527, 554], which established the right to counsel in juvenile proceedings: "We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if *they* are unable to afford counsel, that counsel will be appointed to represent the child." (Italics added.)

Petitioner relies upon *In re Allen, supra,* 71 Cal.2d 388, wherein this court declared invalid the condition in a grant of probation requiring the probationer to reimburse the county for the cost of appointed counsel. We reasoned that the widespread use of such a condition in grants of probation could unnecessarily discourage the free exercise of the constitutional right to appointed counsel by indigent defendants. As we stated in *Allen* (p. 391), "The government is without constitutional authority to impose a predetermined condition on the exercise of a constitutional right or penalize in some manner its use. [Citations.] Thus, in finding unconstitutional the statute involved in *Jackson, supra [United States* v. *Jackson,* 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209]], the court declared that 'Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. . . . The question is not whether the chilling effect is "incidental" rather than intentional; the question is whether the effect is unnecessary and therefore excessive.' "

In *Allen,* the chilling effect of the probation condition was unnecessary and excessive. Although the county may have had a legitimate interest in obtaining reimbursement from persons with an ability to repay counsel costs, that interest could have been promoted without duress, without threatening to withhold or suspend valuable probation privileges. The court in *United States* v. *Jackson, supra,* 390 U.S. 570, 582-583 [20 L.Ed. 2d 138, 147-148], cited as controlling in *Allen,* suggested that the existence of reasonable alternative procedures for accomplishing valid state purposes is a significant factor in determining whether statutory provisions needlessly chill the exercise of constitutional rights.

Moreover, we pointed out in *Allen* that there is a basic inconsistency and unfairness in advising an indigent defendant of his right to the free services of an attorney, and subsequently requiring reimbursement, in an amount concerning which defendant had no voice. (71 Cal.2d at pp. 392-394.)

The considerations which impelled us to strike down the probation condition in *Allen* do not require us to invalidate section 903.1. Unlike the petitioner in *Allen,* petitioner herein was advised in advance that his father could be charged with the cost of appointed counsel, and petitioner does not claim that the fee involved was unreasonable or excessive. Moreover, in the instant case no unfair or unnecessary threat was made to withhold probation or other privileges unless counsel fees were reimbursed.

Nevertheless, it is conceivable that the reimbursement requirement of section 903.1 could, under certain circumstances, cast an undesirable chill upon the minor's free exercise of the right to appointed counsel. However, rather than invalidate that section and thereby defeat the worthy legislative purposes which underlie it, we have concluded that the juvenile court should not permit minors to waive their right to appointed counsel for the purpose of avoiding the operation of the reimbursement requirement.

Sections 634 and 700 of the Welfare and Institutions Code require the appointment of counsel "unless there is an *intelligent* waiver of the right to counsel by the minor." (Italics added.) Moreover, this court has adopted a policy of reviewing the "totality of circumstances" in each particular case, to determine whether or not the minor has knowingly, intelligently and voluntarily waived his constitutional rights, including right to counsel. (See *People* v. *Lara,* 67 Cal.2d 365, 375-391 [62 Cal. Rptr. 586, 432 P.2d 202]; *In re Dennis M., supra,* 70 Cal.2d 444, 462.)

There are numerous authorities holding that a purported waiver of constitutional rights which is induced by fear, coercion or threats is wholly ineffective. (See *In re Gault, supra,* 387 U.S. 1, 55 [18 L.Ed.2d 527, 561]; *Miranda* v. *Arizona,* 384 U.S. 436, 476 [16 L.Ed.2d 694, 724-725, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *Moore* v. *Michigan,* 355 U.S. 155, 164-165 [2 L.Ed.2d 167, 173-174, 78 S.Ct. 191] (waiver of counsel induced by fear); Annot., 71 A.L.R.2d 1160, 1192, § 8 and cases cited; 21 Am.Jur. 2d, Criminal Law, § 317, at p. 344; see generally Note (1967) 19 Hastings L.J. 223.)

As stated in *Gault, supra,* involving waiver of the privilege against self-incrimination by a minor: "We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children. . . . If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair." (387 U.S. at p. 55 [18 L.Ed.2d at p. 561].)

 It is apparent that a waiver of appointed counsel made to avoid or reduce parental pressure or displeasure can be characterized as neither intelligent nor voluntary, being in essence the product of coercion or fear. Therefore, in ꞌany case where, having been fully advised of his rights thereto, a minor of nonindigent parents purports to waive appointed counsel, the juvenile court should refuse to permit the waiver if the circumstances indicate to the court that such extraneous and improper factors are substantially influencing the minor's decision.

 In the instant case, it is undisputed that prior to the hearing, petitioner informed a juvenile court probation officer (an officer of the court under Welf. & Inst. Code, § 581) that he would waive appointed counsel if his father had to reimburse the county for the cost thereof. Nevertheless, the court accepted petitioner's waiver without attempting to determine whether it was truly intelligent and voluntary. Having reviewed the "totality of circumstances" in this case (*People* v. *Lara, supra,* 67 Cal.2d 365), we have concluded that petitioner's waiver was ineffective, and that accordingly his petition for habeas corpus should be granted. In the event new proceedings are initiated against petitioner in juvenile court regarding the matters which resulted in his present confinement, the court should appoint counsel to represent him.

The order to show cause is discharged and a writ of habeas corpus is

granted. The order of commitment of August 6, 1969, is vacated and petitioner is discharged from the custody of the California Youth Authority.

Mosk, Acting C. J., McComb, J., Peters, J., Tobriner, J., Sullivan, J., and Peek, J.,* concurred.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairman of the Judicial Council.