210 Cal.App.3d 326 (1989)
258 Cal. Rptr. 448
In re KERRY O., a Person Coming Under the Juvenile Court Law.
VENTURA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
HARLEY D. et al., Defendants and Appellants.
Docket No. B032608.
Court of Appeals of California, Second District, Division Six.
May 10, 1989.
*329 COUNSEL
Joan A. Borger and Kenneth M. Stern, under appointments by the Court of Appeal, for Defendants and Appellants.
James L. McBride, County Counsel, and Patricia McCourt, Assistant County Counsel, for Plaintiff and Respondent.
OPINION
STONE (S.J.), P.J.
The parents of a minor stipulate in a juvenile dependency hearing that the minor's testimony in a prior proceeding may be used in the dependency proceeding. Does such a stipulation violate the parents' right to confrontation and cross-examination when the juvenile court did not obtain a personal waiver of those rights? We hold it does not.
Harley D. and Rita D. appeal from an order of the Ventura County Juvenile Court adjudging Rita's daughter and Harley's stepdaughter, Kerry O., a dependent of the court within the provisions of Welfare and Institutions Code section 300, subdivisions (a) and (d).[1] (1a) They contend the juvenile court erroneously considered Kerry's prior trial testimony without obtaining a knowing waiver of their right to confront and cross-examine her and thereby deprived them of those constitutional rights. We disagree and affirm the order.

FACTS
May 1, 1987, Ventura County Department of Social Services (VCDSS) filed a petition on behalf of minor Kerry O., born July 25, 1972, alleging that she came within the provisions of section 300, subdivisions (a) and (d) due to sexual molestation by her stepfather and her mother's inability to protect her. The juvenile court ordered Kerry placed with her maternal grandparents pending a contested jurisdictional hearing. Trial began June 11, 1987. The minor testified in chambers out of her parents' presence but with their counsel attending and cross-examining. During the proceedings VCDSS requested, and the court ordered, a placement change because Kerry claimed her uncle, also living with her grandparents, had molested her. October 9, 1987, the judge declared a mistrial for reasons not clear from the record and returned the matter to the trial setting calendar.
*330 After a new judge was assigned, counsel stipulated that the court could read transcripts of the previous trial testimony, including Kerry's, and that the hearing would continue essentially from the point at which the prior judge had declared a mistrial. The trial continued on that basis with the production of additional witnesses and evidence.
The evidence upon which the court sustained the petition included Harley's fondling of Kerry when she was only eight years old. At that time she threatened to tell her mother but Harley discontinued this behavior until she was about 12 years old. At that time he resumed harassing her sexually by watching her shower, making lewd comments, and touching her in a sexual manner, including placing his mouth on her genitals. When she told him to stop, he slapped her.
Kerry complained to her mother, who refused to believe her, and also described his behavior to friends. Rita did insist on having new locks placed on the bedroom doors in order to protect Harley from further accusations. However, she had the locks removed after Kerry and a cousin escaped at night through the window. Rita said Kerry lied because Kerry did not want to move to West Virginia with her family and resented their disapproval of her friends. Although Kerry stated her brother was a witness to some of Harley's mistreatment, her brother denied Kerry's statements. Kerry's grandfather described Kerry and Harley as having a loving, caring relationship. Her aunt, Marcella, however, admitted she thought Harley's behavior toward Kerry inappropriate on occasion. One of Kerry's acquaintances questioned Kerry's veracity. In short, evidence was in conflict.
In finding the allegations that Harley sexually molested Kerry true, and that Rita was informed of this behavior and failed to protect Kerry, the court issued the following ruling: "This court has read the transcripts of the proceedings which took place prior to its entry into the case, has considered all the physical evidence received, has considered the testimonial evidence heard personally by the court and has considered the arguments of counsel. [¶] Of course this court operates under the distinct disadvantage recognized by all parties, that it never had the opportunity to personally observe the minor testify. There is a certain flavor which comes through in the written transcript of her testimony, and some record was made as to the physical deportment during that testimony. Based on having her testimony regarding allegations of sexual misconduct on numerous occasions over the past 15 years, the court could draw some tentative conclusions based on the internal consistency or inconsistency, reasonableness or improbability of Kerry's testimony. Nonetheless, the court treats this area of evidence with extreme caution because of the lack of personal observation. [¶] The court must, nonetheless, make a finding regarding the credibility of the minor in *331 order to make a finding regarding the truth or falsity of the petition. The court, therefore, has looked to other areas to provide corroboration or impeachment of the minor's version of the facts and to test the credibility of witnesses who testified adversely to the minor's position. Some of those factors included the demeanor of certain witnesses while testifying (the minor's brother particularly presented a disturbing and less than credible picture to the court), the opinions of others regarding the minor's truthfulness (including investigative reports to the Public Defender's Office), the evidence regarding reporting of alleged molestation incidents (to the minor's friends, for example), corroborating observations (for example, Marcella [S.]'s observation from Thanksgiving of 1986). Even if the court had the opportunity to observe the minor's testimony, it would undoubtedly be a difficult case in which to find the `truth.' However, the court has carefully reviewed each piece of evidence as it was received and following the submission of the matter, and on balance, is satisfied well beyond a preponderance of the evidence that the Petition is true.... Based on those findings, the court adjudges the minor a dependent under section 300(a) and (d)."

DISCUSSION
Integral to the resolution of the issues presented is whether appellants' attorneys could stipulate to the use of Kerry's prior testimony or whether the stipulation involved rights so fundamental that a personal waiver was required. The answer depends in large part upon the difference between dependency and criminal proceedings. (2a) In criminal proceedings, a defendant has a fundamental right to confront and cross-examine his accusers based upon the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment. (People v. Stritzinger (1983) 34 Cal.3d 505, 515 [194 Cal. Rptr. 431, 668 P.2d 738]; Pointer v. Texas (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065].) The California Constitution, article 1, section 15 also provides a specific guaranty of the right to confrontation, a similar guaranty of which is codified in Penal Code section 686, subdivision 3. (People v. Stritzinger, supra, 34 Cal.3d 505, 515.)
The purpose of the confrontation requirement is to ensure reliability by means of the oath, to expose the witness to cross-examination  "the `greatest legal engine ever invented for the discovery of the truth'" (California v. Green (1970) 399 U.S. 149, 158 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930]), and to permit the trier of fact to weigh the witness's demeanor. (People v. Stritzinger, supra, 34 Cal.3d 505, 515; California v. Green, supra, 399 U.S. 149, 158.) "Thus, `one of the important objects of the right of confrontation was to guarantee that the fact finder had an adequate opportunity to assess the credibility of witnesses.' [Citation.]" (People v. Louis (1986) 42 Cal.3d *332 969, 982 [232 Cal. Rptr. 110, 728 P.2d 180].) (1b) It is specifically that lack of confrontation accorded the parents by the juvenile court to which appellants point as a deprivation of their fundamental rights.
However, it has been held that use of former testimony does not necessarily infringe upon the constitutional right of confrontation so long as there has been due cross-examination. (People v. Rojas (1975) 15 Cal.3d 540, 548 [125 Cal. Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127].) (3a) Even in a criminal proceeding the right to confront and cross-examine is not absolute: a traditional exception to the confrontation requirement exists "`where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant.'" (People v. Louis, supra, 42 Cal.3d 969, 983; see Evid. Code, § 1291.) Thus, a prosecutor may use prior testimony if he or she establishes the unavailability of the witness and the reliability of the testimony. (Ibid.)
(1c) Rita contends that there was no demonstration of unavailability here. (3b) Nevertheless, "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." (California v. Green, supra, 399 U.S. 149, 156 [26 L.Ed.2d 489, 495-496, 90 S.Ct. 1930, fn. omitted].) If the party had an adequate opportunity for cross-examination in an earlier proceeding, the confrontation clause may be satisfied even absent physical confrontation at time of trial. (People v. Brock (1985) 38 Cal.3d 180, 189 [211 Cal. Rptr. 122, 695 P.2d 209].) (1d) In the instant proceeding, there was no need to demonstrate unavailability since all counsel stipulated to use of the transcript.
Rita and Harley assert, however, that the stipulation was not a valid waiver to their right to confront and cross-examine Kerry before the second judge because they were not properly advised that they were waiving a fundamental constitutional right. They further assert that since they were submitting their case partially on the transcript, the court was required to advise them of the constitutional rights they were relinquishing and to obtain a knowing waiver of these rights on the record. (See Bunnell v. Superior Court (1975) 13 Cal.3d 592 [119 Cal. Rptr. 302, 531 P.2d 1086]; Boykin v. Alabama (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; In re Tahl (1969) 1 Cal.3d 122 [81 Cal. Rptr. 577, 460 P.2d 449].)
In Bunnell v. Superior Court, supra, 13 Cal.3d 592, the California Supreme Court held that "`in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and *333 cross-examine witnesses, and against self-incrimination.... Express waivers of the enumerated constitutional rights shall appear....'" (People v. Wright (1987) 43 Cal.3d 487, 493 [233 Cal. Rptr. 69, 729 P.2d 260]; Bunnell, supra, at p. 605.) (4) The purpose of this rule is to assure that any waiver of constitutional and statutory rights by defendants is both voluntary and intelligent and "to relieve trial courts of the unnecessary burden of `attempting to determine in advance of the acceptance of the submission whether guilt is apparent, acknowledged, or contested' [citation]." (43 Cal.3d at p. 493.) (1e) Appellants have cited no cases, nor have we found any, which apply Bunnell to dependency proceedings. We refuse to adopt the practice here for several reasons.
(5) In a criminal proceeding, an express personal waiver is required for the constitutional rights inherent in a plea of guilty and the waiver of jury trial, including the right to confrontation, the right against self-incrimination, and the right to present a defense. (People v. Guzman (1988) 45 Cal.3d 915, 935-936 [248 Cal. Rptr. 467, 755 P.2d 917].) The California Supreme Court has deemed this rule necessary because under the federal Constitution a defendant's plea of guilty to a criminal charge is only valid if it is voluntarily and knowingly made and appellate courts may not presume voluntariness from a silent record. (People v. Wright, supra, 43 Cal.3d at p. 491.) (6) Counsel's waiver, however, is assumed to reflect the client's assent in the absence of an express objection when other "fundamental" rights are involved. (People v. Guzman, supra, 45 Cal.3d at p. 936.) (7) An attorney has the right to control matters of ordinary trial strategy, such as whether a particular witness should be called, whether certain evidence should be introduced, and whether an evidentiary objection should be interposed. (See People v. Frierson (1985) 39 Cal.3d 803, 813 [218 Cal. Rptr. 73, 705 P.2d 396].)
(1f) The case before us, however, is not a criminal proceeding. (8) The primary purpose of juvenile law is the protection of the child, and dependency proceedings, being civil in nature, are designed to protect the child rather than to prosecute the parent. (In re Mary S. (1986) 186 Cal. App.3d 414, 418 [230 Cal. Rptr. 726]; In re Nicole B. (1979) 93 Cal. App.3d 874, 879-880 [155 Cal. Rptr. 916].) Consequently, the paramount concern in a dependency proceeding is the child's welfare. (In re Mary S., supra, at p. 419.) (2b) Moreover, both the federal and state constitutional rights to confrontation are confined by their terms to criminal cases. (Ibid.; In re Donald R. (1987) 195 Cal. App.3d 703, 712 [240 Cal. Rptr. 821]; see U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) (9) Nonetheless, a party to a civil proceeding has a federal due process right under the Fifth and Fourteenth Amendments to confront and cross-examine witnesses. (In re Mary S., supra, at p. 419.) (1g) That right is *334 also conferred by statute in dependency hearings. (Ibid.; § 311, subd. (b); Cal. Rules of Court, rule 1364(a)(3); cf. Evid. Code, § 711.)
(10) As noted in In re Mary S., supra, "Unlike at a criminal proceeding where an express constitutional right to confrontation exists, at a civil proceeding the constitutional right involves general notions of procedural due process." (Id., at p. 419.) In a case involving the court's hearing the child's testimony out of the presence of the parents before current section 350, subdivision (b) expressly authorized that procedure, the reviewing court in In re Mary S. refused to extend the face-to-face component of the confrontation right to dependency hearings where the child's welfare is paramount and where the parent's due process right to confrontation is adequately protected by his counsel's confrontation of the child. (Id., at pp. 419-420.)
(1h) We agree with In re Mary S. that not all formalities of a criminal trial are required in, or applicable to, a dependency proceeding. (See Lois R. v. Superior Court (1971) 19 Cal. App.3d 895, 900 [97 Cal. Rptr. 158]; In re Gault (1967) 387 U.S. 1, 17, [18 L.Ed.2d 527, 540, 87 S.Ct. 1428].) We find that Rita and Harley's due process rights were adequately protected here. Their counsel fully cross-examined Kerry during the prior contested jurisdictional hearing. That testimony was before the trial judge in the proceeding appealed from here. The record does not indicate that she had been excused as a witness. The parents could have called her as a witness again. The court did not foreclose the presentation of any additional evidence or rebuttal. Thus, we find no violation of federal due process.
Identifying appropriate state due process generally involves a balancing of the private interest affected by official action against the governmental interest and administrative burdens that additional or substitute procedural requirement would entail. (In re Donald R., supra, 195 Cal. App.3d 703, 714; People v. Ramirez (1979) 25 Cal.3d 260, 269 [158 Cal. Rptr. 316, 599 P.2d 622].) We conclude that the requirements of federal due process here also satisfy state due process. (In re Donald R., supra, 195 Cal. App.3d 703, 714.) Appellants had the opportunity to  and did  cross-examine the minor. They were advised at the initial detention hearing of their right to confront and cross-examine any witnesses. Consequently, we do not find the court erred in considering the transcript of prior proceedings upon counsels' stipulation without extracting a personal waiver of constitutional rights from the parents.
Even assuming the Bunnell requirements are applicable to dependency proceedings, we would find the error harmless. Bunnell made clear that if the defendant contests guilt after submission on the transcript, the *335 submission is not considered a "slow plea" of guilty, and the trial court's failure to advise the defendant of the rights being waived is reversible only if it is reasonably probable a result more favorable to the defendant would have been reached if he or she had been properly advised. (People v. Wright, supra, 43 Cal.3d 487, 493-495; People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
Here the record reflects that appellants presented additional evidence and vigorously contested the truth of the allegations. Moreover, the court's own detailed ruling illustrates that the minor's personal presence on the witness stand in the second proceeding would not have affected the outcome.
The order appealed from is affirmed.
Gilbert, J., and Abbe, J., concurred.
NOTES
[1] All statutory references hereinafter are to the Welfare and Institutions Code unless otherwise specified.